UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHANNON J. BONES, a/k/a Shannon Joy,
individually and as a parent and natural
guardian of M.B., an infant,

|  |  |
|---|---|
| Plaintiff, | Case # 23-CV-06201-FPG |
| v. | DECISION AND ORDER |
| COUNTY OF MONROE, et al., | |
| Defendants. | |

## INTRODUCTION

On April 11, 2023, Plaintiff Shannon J. Bones, a/k/a Shannon Joy, individually and as a parent and natural guardian of M.B., an infant, ("Plaintiff") brought this action against Defendants County of Monroe, County of Monroe Department of Public Health, Fairport Police Department, and Dr. Michael Mendoza, in his capacity as Commissioner for the Monroe County Department of Public Health (collectively, "Defendants"), asserting claims for constitutional violations pursuant to 42 U.S.C. § 1983. ECF No. 1 at 7-9. This action arises out of Defendants' enforcement of a COVID-19 health quarantine order against M.B. in April 2021. *Id.* at 4.

On July 10, 2023, Defendants County of Monroe, County of Monroe Department of Public Health, and Dr. Michael Mendoza filed a motion to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 6. On August 28, 2023, Defendant Fairport Police Department filed a separate motion to dismiss under Rule 12(b)(6). ECF No. 13. On October 13, 2023, Plaintiff filed responses to both motions and attached a proposed amended complaint to each response. ECF Nos. 19-20. On October 27, 2023, Defendants replied. ECF Nos. 21-22. For the reasons below, Defendants' motions are granted.

1

### A.  Proposed Amended Complaint

As a preliminary matter, the Court must address the filing of Plaintiff's proposed amended complaint.  ECF Nos. 19-1, 20-1.  Plaintiff has included a proposed amended complaint within her memoranda in opposition to Defendants' motions to dismiss, rather than filing a motion for leave to amend under Local Rule of Civil Procedure 15(a).  Defendants argue that Plaintiff should not be permitted to request leave to amend absent a proper motion and, in the alternative, that Plaintiff's request for leave to amend should be denied as futile should the Court be inclined to waive noncompliance with Local Rule 15(a).  ECF Nos. 21-22.  The Court, in its discretion, will consider Plaintiff's request for leave to amend and determine whether the proposed amendment would be futile.

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading as a matter of course within 21 days after service of a defendant's motion to dismiss under Rule 12(b)(6).  Plaintiff did not do so.  Under Rule 15(a)(2), in all other cases, a party may amend its pleading only with the opposing party's written consent or the Court's leave.  In her opposition memoranda, Plaintiff requests leave under Rule 15(a)(2).[1]  ECF Nos. 19 at 2, 20 at 2.  Such leave shall be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[T]he decision to grant leave to amend is wholly within a district court's discretion."  *Henneberry v. Sumitomo Corporation of America*, 532 F. Supp. 2d 523, 531 (S.D.N.Y. 2007).  Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. New York City Dep't of Corrs.,* 214 F.3d 275, 283 (2d Cir. 2000).  Defendants argue that leave to amend should be denied on the basis of futility.  ECF Nos. 21-22.

---

[1] Defendant Fairport Police Department's argument that Federal Rule of Civil Procedure 15(c) precludes leave to amend is inapposite because Plaintiff invokes Rule 15(a) as a basis for the request for leave to amend.  *See* ECF No. 13 at 4-5.

Local Rule of Civil Procedure 15(a) provides that a "[a] movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the *motion*." (emphasis added).  Local Rule 15(b) provides that "the amendment(s) or supplement(s) to the original pleading shall be identified in the proposed pleading through the use of a word processing 'red-line' function or other similar markings that are visible in both electronic and paper format."

As discussed, Plaintiff requests leave to amend within her responses to Defendants' motions to dismiss, not a motion for leave to amend under Local Rule 15(a), which is not procedurally proper.  Plaintiff has, however, presented a proposed amended complaint that complies with Local Rule 15(b).  *See* ECF Nos. 19-1, 20-1.

Despite Plaintiff's failure to comply with Local Rule 15(a), the Court will consider Plaintiff's request for leave to amend.  Courts have broad discretion under Fed. R. Civ. P. 15(a)(2) to give leave to amend "when justice so requires[,]" and an "inherent power" to manage their own dockets "so as to achieve the orderly and expeditious disposition of cases," *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013), so long as this inherent authority is exercised in a manner that is consistent with the Federal Rules of Civil Procedure.  *Landau & Cleary, Ltd. v. Hribar Trucking, Inc.*, 867 F.2d 996 (7th Cir. 1989).  Plaintiff's request for leave to amend, though improperly presented, is within the ambit of Rule 15(a)(2) and consideration of it at this juncture will facilitate a more "expeditious" disposition of Defendants' motions to dismiss, for the reasons explained below.  *Henneberry*, 532 F. Supp. 2d at 531.

Plaintiff's proposed amended complaint, *see* ECF Nos. 19-1 and 20-1, includes additional factual allegations arising from the same course of conduct alleged in Plaintiff's original complaint, and identifies with greater particularity the contours of the claims Plaintiff had asserted

in the original complaint.  *See* ECF No. 1 (asserting a single cause of action for several distinct constitutional violations).  Contrary to Defendants' contention, Plaintiff does not appear to assert "new causes of action" in the proposed amended complaint, ECF No. 21 at 2; rather, Plaintiff's proposed amended complaint appears to assert the same claims that her original complaint alluded to, but did not expressly state in an organized or immediately discernible manner.  Many of the arguments Defendants make in their motions to dismiss apply with equal force to the proposed amended complaint, except one, due to Plaintiff's request for the addition of a new party.

In her proposed amended complaint, Plaintiff requests the addition of the Village of Fairport as a Defendant, following her concession that the claims she had asserted against Defendants Fairport Police Department and Monroe County Department of Health must be dismissed because each defendant is not a proper party to this action, as Defendants had argued in their motions to dismiss.  *See Bones v. Cnty. of Monroe*, No. 22-CV-6072-FPG, 2022 WL 4921985, at *7 (W.D.N.Y. Oct. 4, 2022) (dismissing claims against police department because it is "not an entity capable of being sued[,]" separate from the municipality); *see also Busch v. Howard*, No. 1:20-CV-01515, 2021 WL 2946532, at *5 (W.D.N.Y. July 14, 2021) (county departments are merely "administrative arms of a municipality" and "do not have a legal identity separate and apart from the municipality and cannot sue or be sued") (collecting cases); ECF Nos. 6, 13.  Because Plaintiff's proposed amended complaint appears to rectify a discrete question as to the proper party to be subjected to the claims originally asserted against Defendant Fairport Police Department, irrespective of the proposed additional Defendant's liability, the Court is inclined to consider Plaintiff's request for leave to amend and determine whether Plaintiff's proposed amendment would be futile with respect to the proposed additional Defendant.

Still, the Court is mindful that, when it is presented with a proposed amended pleading, "the opposing part[ies] must be put on notice of the nature of the proposed amendment so that [they are] given ample opportunity to present specific objections" to it. *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 515 (E.D. Pa. 2012). Here, the Court finds that Defendants have received ample opportunity to respond. Defendants discuss at length in their reply briefs the claims asserted in the proposed amended complaint and present varied arguments as to why Plaintiff's proposed amendment would be futile. *See* ECF Nos. 21-22. Accordingly, the Court will consider Plaintiff's proposed amendment and determine whether the proposed amendment would be futile.

## BACKGROUND

On a Rule 12(b)(6) motion, courts must accept as true all well-pleaded facts in a proposed amended complaint and draw all reasonable inferences in favor of the party seeking leave to amend. *See Dougherty v. Town of North Hempstead Board of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). Accordingly, the following facts are taken from Plaintiff's proposed amended complaint.

On April 3, 2021, Plaintiff and M.B. were at their home in the Village of Fairport when, at around 10:00 a.m., members of the Fairport Police Department, at the direction of Monroe County, visited the home to serve M.B. with a "Health Order of Quarantine for COVID-19," signed by Defendant Mendoza. ECF No. 19-1 at 14-15. Monroe County also "unnecessarily dispatched" the Monroe County Sheriff to serve the order. *Id*. at 15. When the order was served, M.B. was subjected to "intimidating tactics" by a Fairport police officer. *Id*. The police officers "caused a disturbance by banging aggressively" on Plaintiff's door, "which caused neighbors to gather in the

street." *Id*. at 17.  This incident "caused and continues to cause" Plaintiff "great distress" and "embarrassment." *Id*.

Plaintiff alleges that the motivation for Defendants' conduct was not a dispassionate desire to enforce a public health measure, but Plaintiff's political commentary.  Plaintiff is a "broadcaster and political commentator by trade, and the host of a radio program based in the Rochester, New York area." ECF No. 19-1 at 13.  Prior to the incident that gave rise to the present action, Plaintiff "appeared on local, regional and national news and entertainment shows," and had "expressed her critical views on controversial topics, including, but not limited to, [] Defendants' policies, procedures and decisions." *Id*.  Specifically, Plaintiff had been a "vocal and public critic of [Monroe County] and [its] polices in response to the COVID-19 virus." *Id*. at 15.  Plaintiff alleges that "Defendants were well aware of [Plaintiff's] publicly voiced criticism" and that Defendants Monroe County, Dr. Michael Mendoza, and the Village of Fairport "communicated with one another" to serve the quarantine order in response to Plaintiff's criticism. *Id*. at 15-17.

In further support of these allegations, Plaintiff alleges that "on April 2, 2021," the day before the order was served, she spoke on the phone with a pediatric nurse practitioner at the Monroe County Department of Health who was "in charge of isolation follow up and contract [sic] tracing during the COVID-19 pandemic." *Id*. at 13.  Plaintiff alleges that the nurse practitioner indicated that Defendants may serve M.B. with a quarantine order because Defendants believed "M.B. had come into contact" with a separate individual that had contracted COVID-19.  ECF No. 19-1 at 14.  During the call, Plaintiff alleges that she contested whether M.B. was exposed to the individual who had contracted COVID-19 because M.B. "was not in contact with the individual." ECF No. 19-1 at 14.  The nurse practitioner indicated that the quarantine order may be served by

police at Plaintiff's home.  *Id.*  After the phone call, Plaintiff alleges that she received a call from the Monroe County Sheriff, but does not describe the content of this call.  *Id.*

In April 2023, Plaintiff brought the present action.  ECF No. 1.  In October 2023, Plaintiff filed her proposed amended complaint, asserting five constitutional claims against Defendants County of Monroe, Dr. Michael Mendoza, and Village of Fairport.[2]  ECF Nos. 19-1, 20-1.  Plaintiff asserts claims for (i) First Amendment retaliation pursuant to 42 U.S.C. §1983, (ii) "class of one" Equal Protection pursuant to 42 U.S.C. § 1983, (iii) "selective enforcement" Equal Protection pursuant to 42 U.S.C. § 1983, (iv) conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 and § 1986, and (v) a violation of M.B.'s "right to travel" pursuant to 42 U.S.C. § 1983.  ECF Nos. 19-1 at 18-24, 20-1 at 18-24.[3]

## LEGAL STANDARD

"The standards for determining whether a proposed amendment would be futile are the same as for considering a motion to dismiss under Rule 12(b)(6)."  *Argentieri v. Clerk of Ct. for Judge Kmiotek*, 420 F. Supp. 2d 162, 165 (W.D.N.Y. 2006) (quoting *Lucente v. International Business Machines Corp.,* 310 F.3d 243, 248 (2d Cir. 2002); *see also AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim[.]").  To survive a Rule 12(b)(6) challenge, a complaint "must contain sufficient factual

---

[2] Because the parties do not dispute that Defendants County of Monroe Department of Health and Fairport Police Department are not proper parties to this action, *see* Section B, *supra*, the Court does not address any claim asserted against these Defendants.

[3] Plaintiff also references several other bases for her claims throughout both her original complaint and proposed amended complaint, including her "right to liberty."  ECF No. 1; ECF No. 19-1, 20-1.  This is not a cognizable claim, and the Court accordingly does not address it.  *See Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 307 (E.D.N.Y. 2014) (rejecting Section 1983 claim premised on the "vague invocation of the right to life, liberty and the pursuit of happiness" (internal quotation marks omitted)); *Transitional Servs. of N.Y. for Long Island, Inc. v. N.Y.S. Office of Mental Health*, 91 F. Supp. 3d 438, 442 (E.D.N.Y. 2015) ("Section 1983 is enforceable only for violations of federal rights." (internal quotation marks omitted)).

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). A district court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

The "touchstone for a well-pleaded complaint under Federal Rules of Civil Procedure 8(a) and 12(b)(6) is plausibility." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 670 (S.D.N.Y. 2007) (citing *Twombly*, 550 U.S. at 560-61). To meet this plausibility standard, the factual allegations must permit the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. 679.

## DISCUSSION

### I.    First Amendment Retaliation Under Section 1983

Plaintiff asserts under 42 U.S.C. §1983 that Defendants retaliated against her for her "past speech and press" in violation of the First Amendment by serving the quarantine order at her home with police assistance. ECF No. 19-1 at 18-19. Defendants contend that Plaintiff fails to allege the existence of a municipal custom or policy that caused the alleged constitutional violation. ECF No. 6-2 at 2; ECF No. 13-3 at 3-5. Defendants also argue that Plaintiff fails to allege that Defendant Mendoza had any final policy making authority with respect to the service of the quarantine order, and that he is entitled to qualified immunity. ECF No. 6-2 at 3-4. For the reasons below, the Court concludes that Plaintiff's claim would not survive a motion to dismiss, and accordingly, Plaintiff's proposed amendment would be futile.

### A. *Monell* Liability

"To prevail on a 42 U.S.C. § 1983 claim against a municipality, a plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights." *Plair v. City of New York*, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (citing *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 693 (1978).  "A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others encountering those subordinates." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, … a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015).  "To survive a motion to dismiss a municipal liability claim, a plaintiff must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 95 (E.D.N.Y. 2016) (internal quotation marks and ellipsis omitted); *see also Cruz v. Vill. of Spring Valley*, No. 21-CV-2073, 2022 WL 428247, at *6 (S.D.N.Y. Feb. 11, 2022) (collecting cases).  Put simply, to allege "there is a policy does not make it so." *Vassallo v. City of New York*, No. 15-CV-7125, 2016 WL

6902478, at *14 (S.D.N.Y. Nov. 22, 2016) (internal quotation marks omitted); *see also Cruz*, 2022 WL 428247, at *6 ("Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." (internal quotation marks omitted)).

Plaintiff's proposed amended complaint does not plausibly allege a municipal policy or custom sufficient to establish municipal liability against Defendants.  Throughout Plaintiff's proposed pleading, Plaintiff does not allege a custom or policy that may have plausibly caused the alleged misconduct in a non-conclusory or speculative manner.  Plaintiff claims that she had been a public critic of Defendants' "policies in response to the COVID-19 virus[,]" but does not state a particular policy, nor any policy or custom that may have caused the alleged unconstitutional conduct at issue in this case; specifically, Defendants' service of the quarantine order at her home with police assistance, in response to her speech.[4]  ECF No. 19-1 at 6.  Plaintiff alleges only that she spoke with a nurse practitioner that indicated that Defendants may serve M.B. with a quarantine order, and that the quarantine order may be served by police.  *See* ECF No. 19-1 at 14. While such a conversation may have occurred, this allegation, alone, is insufficient to support an inference that a municipal policy existed with respect to the challenged conduct.  *See Cruz*, 2022 WL 428247, at *6.  Plaintiff repeatedly alleges that "Defendants' conduct was "retaliatory" due to her "disagreements with [] Defendants' policy enforcement of COVID-19 protocols[,]" but fails to allege any specific policy or protocol that may have plausibly led to the alleged constitutional deprivation, as is required under Section 1983.  Without facts tending to support, at least circumstantially, an inference that a municipal policy or custom existed with respect to the

---

[4] The Court does not construe this claim to allege that the health order of quarantine enacted in connection with COVID-19 was, itself, unconstitutional.  Rather, Plaintiff alleges that Defendants' *enforcement* of the health order of quarantine, as applied to M.B. via police assistance, was the alleged unconstitutional act.  For a discussion of the former, *see* Section V. *infra*.

challenged conduct, Plaintiff's proposed amended complaint fails to plausibly allege municipal liability.

Moreover, even assuming for the purposes of this analysis that Defendants' enforcement of the quarantine order was executed in a constitutionally impermissible manner, "in the absence of other evidence, it is well-settled that a 'single incident of errant behavior is an insufficient basis for finding that a municipal policy caused [a] plaintiff's injury.'" *JF v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609, 617 (S.D.N.Y. 2016) (quoting *Sarus v. Rotundo*, 831 F.2d 397, 402 (2d Cir. 1987)); *see DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (concluding that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal liability").

With respect to Defendant Mendoza, specifically, Plaintiff contends that he may still be subject to *Monell* liability because it has been applied to public officials "who can be considered a final decision maker over significant matters under certain circumstances." *Saunders v. N.Y.C. Dept. of Educ.*, No. 07-CV-2725 (SJF) (LB), 2010 WL 2985031, at *3 (E.D.N.Y. July 20, 2010)). Plaintiff, however, provides no factual allegations to demonstrate that Defendant Mendoza was, indeed, the final decision maker with respect to the alleged misconduct, despite her allegation that the quarantine order was "signed" by Defendant Mendoza.  ECF No. 19-1 at 4, 6.  Accepting as true that Defendant Mendoza may have authorized the issuance of quarantine orders as Commissioner of the County of Monroe Department of Public Health, in general, Plaintiff proffers no allegations that he decided or directed that the order in question would be enforced in the particular manner Plaintiff alleges.

More to the point, the Supreme Court has stated that "whether a particular official has final policy making authority is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112,

123 (1988) (internal quotations omitted).  To adequately plead such a claim on the basis that Defendant Mendoza was a final decision maker, then, Plaintiff must allege that, with respect to the challenged conduct, he was responsible under a particular state law for making a policy that enabled it.  *See Hurdle v. Bd. of Educ.*, 113 F. App'x 423, 425-26 (2d Cir. 2004*); see also Searle v. Red Creek Cent. Sch. Dist.*, No. 21-CV-6086-FPG, 2021 WL 5086405, at *6 (W.D.N.Y. Nov. 2, 2021).  Plaintiff includes no such allegations except for her conclusory allegation that Defendant Mendoza acted "under his final policy making authority."  ECF No. 19-1 at 4.  Still, Plaintiff's claim suffers from a more fundamental deficiency.  Even if Plaintiff had plausibly alleged a custom or policy sufficient to establish municipal liability, which she does not, Plaintiff would still fail to plausibly allege the underlying constitutional violation asserted.

### B.  First Amendment Retaliation

To state a claim for First Amendment retaliation, Plaintiff must allege that "(1) [s]he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of [her] First Amendment right" or caused "some other concrete harm."  *Searle v. Red Creek Cent. Sch. Dist.*, No. 22-2049-CV, 2023 WL 3398137, at *2 (2d Cir. May 12, 2023); *see Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (plaintiff has standing to assert a First Amendment retaliation claim where "he can show either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm. Various non-speech related harms are sufficient to give a plaintiff standing."); *see also Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011) (summarizing cases recognizing other forms of harm).

Assuming *arguendo* that Plaintiff has alleged sufficient facts to satisfy the first two elements, Plaintiff's pleading lacks allegations that plausibly establish the third.  Plaintiff's

proposed amended complaint does not establish that her exercise of her First Amendment right was "chilled," nor that she suffered any other cognizable "concrete harm" as a result of Defendants' conduct.

To satisfy the "chilling" requirement, a plaintiff typically must show that the retaliatory conduct deprived her of her First Amendment right by either (1) silencing her or (2) having some "actual, non-speculative chilling effect on [her] speech." *See Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008). Here, Plaintiff does not allege that she was silenced or inhibited from exercising her right to free speech as a result of Defendants' conduct. In her proposed amended complaint, Plaintiff does not allege any facts plausibly suggesting that she was prevented from continuing to voice criticism of Defendants, in public or private, nor that she was coerced or intimidated into ceasing her speech. That is, Plaintiff alleges no plausible "change in [] behavior" for the purposes of this requirement. *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Likewise, Plaintiff fails to allege that she suffered "concrete harm" in a manner sufficient to establish facial plausibility in this Circuit. Plaintiff alleges only that the incident in question caused "distress" and "embarrassment[,]" which, alone, is insufficient to establish such harm. ECF No. 19-1 at 7, 10. The Second Circuit "demands more" than such "cursory" allegations in the First Amendment retaliation context. *Zherka v. Amicone*, 634 F.3d 642, 647, fn. 9 (2d Cir. 2011). While certain limited forms of harm, beyond "chilling," can be sufficient to establish "concrete harm" for the purposes of a First Amendment retaliation claim, no such harms are alleged by Plaintiff in this action. *See, e.g., Zherka*, 634 F.3d at 646 (lost government contract); *Tabbaa v. Chertoff*, 509 F.3d 89, 102 (2d Cir. 2007) (additional scrutiny at border crossing); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) (alleging retaliatory revocation

of building permit); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir.1994) (alleging retaliatory failure to enforce zoning laws).

Accordingly, even accepting as true Plaintiff's allegations that Defendants intended to "stifle" and "silence" Plaintiff, Plaintiff does not allege that her speech was "effectively" or "actually chilled" as a result of Defendants' conduct, nor that she suffered any other "concrete harm" sufficient to establish facial plausibility for this claim.  ECF No. 19-1 at 10; *Avgerinos*, 690 F. Supp. 2d at 132.

Even so, Plaintiff asserts that Defendant Mendoza may yet be held liable for First Amendment retaliation in his individual capacity.  ECF No. 20 at 3.  Defendants maintain that Defendant Mendoza is shielded from individual liability by qualified immunity.  *See* ECF Nos. 6, 22.  Qualified immunity protects public officials when they make reasonable, even if mistaken, decisions.  "To decide whether to grant a public official's motion [to dismiss] based on qualified immunity, courts ask: (1) whether the facts, viewed in the plaintiff's favor, show that the official's conduct violated a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of the alleged violation."  *See Hansen v. Watkins Glen Cent. Sch. Dist.*, No. 17-CV-6143-FPG-JWF, 2019 WL 3113309, at *4 (W.D.N.Y. July 15, 2019) (citing *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)).  Because the Court has determined that Plaintiff does not plausibly allege a constitutional violation, the Court need not determine whether the right at issue was clearly established at the time of the alleged violation for qualified immunity purposes.

Thus, the Court concludes that this claim would not survive Rule 12(b)(6) dismissal, and Plaintiff's proposed amendment would be futile.

## II.      Equal Protection: Class of One, Selective Enforcement

Next, Plaintiff asserts that Defendants' service of the quarantine order violated her and M.B.'s right to Equal Protection under the Fourteenth Amendment.  The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  An individual who does not allege discrimination "based upon membership in a protected class[,]" such as Plaintiff, may assert either a "class of one" or a "selective enforcement" equal protection claim.  *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018); *Artec Constr. & Dev. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 15 Civ. 9494 (KPF), 2017 WL 782911, at *2 (S.D.N.Y. Feb. 27, 2017).  Plaintiff asserts both.

### A.  Class of One

Plaintiff asserts under 42 U.S.C. §1983 a "class of one" Equal Protection claim in connection with Defendants' service of the quarantine order; specifically, that "others exposed to the individual who had contracted COVID-19 were not intimidated by service of the Health Order by Police or intimidated into complying with the Health Order" and M.B. was "treated differently from others served with the Health Order of Quarantine."  ECF No. 19-1 at 11-12.  Defendants argue that Plaintiff fails to sufficiently allege the existence of similarly situated comparators.  The Court agrees with Defendants.

To prevail on a "class of one" claim, a plaintiff must establish that "[i] no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and [ii] the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir.

2019) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).  "Class of one" claims require "an 'extremely high' degree of similarity between a plaintiff and comparator."  *Id*. at 93.

Here, Plaintiff fails to plausibly allege a similarly situated comparator, beyond her generalized assertions that she was "treated differently than others" and her conclusory allegation that "no other minor who was served an Order of Quarantine had the police arrive at their door to serve the notice."  ECF No. 19-1 at 7.  The Court may not reasonably infer the existence of a similarly situated comparator, as required, from these conclusory allegations, alone.  Additionally, Plaintiff fails to allege an "extremely high degree of similarity" between the circumstances of M.B. and other children that may have been subjected to a health quarantine order, beyond her own conclusory statements.  *Hu*, 927, F.3d at 93.  Accordingly, the Court concludes this claim would not survive dismissal, and amendment would be futile.

### B.  Selective Enforcement

Plaintiff asserts in her "selective enforcement" claim the same allegations proffered in support of her "class of one" claim; specifically, that "others exposed to the individual who had contracted COVID-19 were not intimidated by service of the Health Order by Police or intimidated into complying with the Health Order" and M.B. was "treated differently from others served with the Health Order of Quarantine."  ECF No. 19-1 at 12-13.  Defendants argue, and the Court agrees, that Plaintiff again does not sufficiently allege a comparator.

To plead a selective enforcement claim, Plaintiff must allege that (1) she was treated differently than other "similarly situated" individuals; and (2) "such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Jones v. Bayshore Union Free Sch. Dist.*, 666 F. App'x 92, 94 (2d Cir. 2016) (summary order) ("*Jones II*") (quoting

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (internal quotations omitted)); *Searle*, 2021 WL 5086405, at *6.  While "class of one" claims require "an 'extremely high' degree of similarity between a plaintiff and comparator," selective enforcement claims "merely require[ ] a 'reasonably close resemblance' between a plaintiff's and comparator's circumstances."  *Hu*, 927 F.3d at 93.

Assuming Plaintiff has properly alleged that service of the quarantine order was impermissibly motivated by retaliation for her speech, she fails to allege the existence of similarly situated individuals who were treated differently.  Plaintiff's allegation that Defendants treated her "differently from others served with the Health Order of Quarantine" is insufficient, without more, to survive Rule 12(b)(6) dismissal.  *See Jones II*, 666 F. App'x at 94 (dismissing plaintiff's equal protection claim where complaint contained only bare allegations that others were similarly situated to him); *Kamholtz v. Yates Cnty.*, 350 F. App'x 589, 591 (2d Cir. 2009) (summary order).  Accordingly, this claim is legally insufficient, and Plaintiff's proposed amendment would be futile.

### III. Conspiracy to Interfere with Civil Rights Pursuant to 42 U.S.C. § 1985 and § 1986

Plaintiff next asserts a conspiracy to interfere with civil rights claim pursuant to 42 U.S.C. § 1985 and § 1986, alleging that Defendants conspired and "communicated" with one another "for the purpose of arranging to have police intimidate an[d] scare" Plaintiff and M.B. into complying with the quarantine order.  ECF No. 19-1 at 14-15.  As Defendants argue, however, Plaintiff's Section 1985 claim fails because Plaintiff fails to allege "some racial or [] otherwise class-based, invidious discriminatory animus behind the conspirators' action."  *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004).  Plaintiff makes no such showing in her pleadings.  *See* ECF Nos. 1 at 7-8, 19-1 at 13-14; *see also Levine v. New York State Police*, No. 21-CV-1181, 2022 WL 1987845, at *14

(N.D.N.Y. June 6, 2022). As a result, Plaintiff's Section 1986 claim must also be dismissed. *Steadman v. Mayo*, No. 09-CV-5154, 2012 WL 1948804, at *5 (S.D.N.Y. Mar. 27, 2012) (Section 1986 claim must fail as a matter of pleading because it is contingent on the pleading of an adequate 1985 claim).[5]   Accordingly, this claim would not survive a motion to dismiss, and Plaintiff's proposed amendment with respect to this claim would be futile.

## IV.   Right to Travel

Plaintiff asserts under 42 U.S.C. §1983 that the order of quarantine that restricted M.B.'s movement to her home violated M.B.'s "constitutional right to travel."[6]   ECF No. 19-1 at 15. Plaintiff alleges that the quarantine order "stated that [M.B.] could not leave her house for ten days following her exposure[,]" and that the order "prevented her from exercising her right to travel." ECF No. 19-1 at 15-16.   Defendants, and the Court, construe this claim to challenge the constitutionality of the quarantine order, itself, rather than its enforcement as alleged in Plaintiff's prior claims.[7]   ECF No. 6-2 at 6.   Defendants argue that the order is constitutional under *Jacobson v. Commonwealth of Massachusetts* and its progeny.   *Id*.   Applying the *Jacobson* framework, the Court confirms its constitutionality.[8]

---

[5] Under 42 U.S.C. § 1986, a defendant can be held liable for neglecting or refusing to stop a conspiracy when he was aware of the conspiracy and in a position to prevent it.   *See* 42 U.S.C. § 1986.   However, "a claim under section 1986 … lies only if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994).

[6] Though Plaintiff asserts this claim against all Defendants, the Court can discern no factual basis for alleging this claim against proposed Defendant Village of Fairport.   Plaintiff does not allege that that Defendant contributed to the creation or issuance of the challenged public health measure.   Accordingly, the Court analyzes the sufficiency of this claim only with respect to Defendants County of Monroe and Mendoza.

[7] Defendants do not appear to dispute that the issuance of public health measures during COVID-19, like the quarantine order, amounted to a "custom or policy" sufficient to establish *Monell* liability, nor that the practice may have caused the alleged constitutional violation of M.B.'s "right to travel."   *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 693 (1978). The Court accordingly confines its analysis whether a "constitutional deprivation" occurred.   *Plair v. City of New York*, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011).

[8] Though the parties do not raise it, the Court is mindful that this claim may be subject to dismissal for "mootness." A claim is moot, and therefore no longer a case or controversy for the purposes of Article III, "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike,*

The right to travel is not explicitly mentioned in the text of the Constitution, *Saenz v. Roe*, 526 U.S. 489, 498 (1999), but it is undoubtedly fundamental. *See, e.g.*, *United States v. Guest*, 383 U.S. 745, 758, (1966); *see also Page v. Cuomo*, 478 F. Supp. 3d 355, 362 (N.D.N.Y. 2020). As the Second Circuit has acknowledged, this right to travel includes a "constitutional right to travel within a state." *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 649 (2d Cir. 1971).

In *Jacobson*, the Supreme Court articulated a broadly deferential standard for assessing the constitutionality of emergency public health measures, pursuant to which states and local authorities are granted substantial deference in enacting measures "to prevent the spread of contagious diseases" during public health crises. 197 U.S. at 35 (1908); *see Jones v. Cuomo*, 542 F. Supp. 3d 207, 217 (S.D.N.Y. 2021).   Under *Jacobson*, a state or local regulation "enacted to protect the public health" will survive judicial scrutiny unless it bears "no real or substantial relation to [the public health], or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law[.]"  197 U.S. at 31.   While *Jacobson* "predated the modern constitutional jurisprudence of tiers of scrutiny," *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 635 (2d Cir. 2020), it has been likened to rational basis review, *see Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. — (2020) (Gorsuch, J., concurring); *Jones*, 542 F. Supp. 3d at 217.

"Courts across the country have nearly uniformly relied on *Jacobson*'s framework to analyze emergency public health measures put in place to curb the spread of coronavirus."  *Page*, 478 F. Supp. 3d at 366; *see, e.g., In re Abbott*, 954 F.3d 772, 785 (5th Cir. 2020) (faulting district court for "ignor[ing] the framework governing emergency public health measures" set forth in

---

*Inc.*, 568 U.S. 85, 91 (2013).  Still, a defendant's "voluntary cessation of challenged conduct does not [necessarily] render a [claim] moot."  *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).  Because Defendants' cessation of the challenged conduct under *Knox* is not alleged or raised, the Court cannot engage meaningfully with the mootness doctrine and applies the *Jacobson* framework.  In addition, the Court assumes, without deciding, for the purposes of this Decision and Order that Plaintiff has Article III standing to pursue this claim on M.B.'s behalf.

*Jacobson*); *In re Rutledge*, 956 F.3d 1018, 1028 (8th Cir. 2020) ("[T]he district court's failure to apply the *Jacobson* framework produced a patently erroneous result."); *Carmichael v. Ige*, No. 20-00273, 2020 WL 3630738, at *5 n.6 (D. Haw. July 2, 2020) (rejecting assertion that *Jacobson* is inapplicable to plaintiffs' challenge to quarantine requirement); *Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 214 (N.D.N.Y. July 6, 2020) (Suddaby, J.) ("[T]he Court joins the many courts throughout the country that rely on *Jacobson* when determining if a governor's executive order has improperly curtailed an individual's constitutional right during the COVID–19 pandemic."); *McCarthy v. Cuomo*, No. 20-CV-2124 (ARR), 2020 WL 3286530, at *3 (E.D.N.Y. June 18, 2020) (applying *Jacobson* to reject challenge to several State Executive Orders related to the pandemic).

Under *Jacobson*, "[t]he bottom line is this: when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *In re Abbott*, 954 F.3d at 784 (quoting *Jacobson*, 197 U.S. at 31); *Page*, 478 F. Supp. 3d at 366.

Here, Plaintiff presents sparse factual allegations from which the Court may examine the substance of the public health measure in question, but even liberally construing Plaintiff's allegations in her favor, the Court concludes that the measure passes muster under *Jacobson*'s deferential standard.  Plaintiff's uncontested allegations include that a "Health Order of Quarantine [] directed [M.B] to remain at her residence for ten (10) days[,]" and that the order was "issued by Defendant Mendoza."  ECF No. 19-1 at 10-11.  Plaintiff further alleges that M.B. "could not leave her house for ten days following her exposure, which was determined by the Monroe County

Department of Health to have occurred on March 27, [2021]."[9]  *Id*. at 15.  This is the extent of the relevant allegations.  Applying the *Jacobson* framework, the Court cannot conclude that the ten-day quarantine policy, as alleged, did not bear some "'real or substantial relation' to the public health crisis[,]" nor that it was "'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'"  *In re Abbott*, 954 F.3d at 784.  Courts have routinely found even more restrictive public health measures constitutional, and this Court discerns no reason why the challenged measure here should be treated differently.  *See Page*, 478 F. Supp. 3d at 367 (finding New York's "fourteen day" quarantine period constitutional under *Jacobson* because, *inter alia*, COVID-19 "has an incubation period of up to fourteen days"); *see also Jones*, 542 F. Supp. 3d at 219 (same); *McCarthy*, 2020 WL 328650, at *3 (collecting cases upholding restrictions on social gatherings).  Accordingly, the Court concludes that the challenged measure is constitutionally permissible under the *Jacobson* framework.  Therefore, the Court concludes that this claim would not survive a Rule 12(b)(6) motion, and Plaintiff's proposed amendment would be futile.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted.  The Clerk of Court is directed to (i) terminate Defendants County of Monroe Department of Public Health and Fairport Police Department from this action; (ii) update the case caption accordingly; and then (iii) enter judgment for Defendants and close this case.

IT IS SO ORDERED.

---

[9] To the extent Plaintiff argues that M.B "was not able to exercise her right to travel […] for additional time" because the quarantine order "should have been based on the exposure date which [Plaintiff alleges] occurred earlier in the week on Thursday or Friday, prior to [Saturday,] March 27, 2021," ECF No. 19-1 at 15-16, the Court finds that, even accepting as true this contention that the exposure date was one or two days before March, 27, 2021, this "additional time" of approximately one or two days would not materially change the Court's analysis of the order under *Jacobson*. In addition, Plaintiff presents no plausible allegations that the exposure date the quarantine order was based on was estimated or imposed in an "arbitrary [or] unreasonable manner." *Luke's Catering Serv., LLC v. Cuomo*, 485 F. Supp. 3d 369, 379 (W.D.N.Y. 2020) (citing *In re Abbott*, 954 F.3d at 783).

Dated:  December 20, 2023
            Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York